IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 13 |
| SCOTT D. RICHTER ) | |
| HEATHER N. RICHTER ) | |
| ) | Bankruptcy No. 10-01260 |
| Debtors. ) | |

_____

## ORDER RE MOTION TO DISMISS

This matter came before the Court on June 23, 2010 at a hearing on a creditor's Motion to Dismiss this Chapter 13 case. The Chapter 13 Trustee ("Trustee") and the Internal Revenue Service ("IRS") filed joinders in the Motion to Dismiss which was filed by another creditor. While that creditor, Best of Iowa Community Credit Union, has now withdrawn its Motion to Dismiss, the joinders still remain before the Court. Attorney Carol F. Dunbar appeared as Chapter 13 Trustee. Attorney Stephanie J. Wright appeared for the United States of America on behalf of the IRS. Attorney Steven Klesner appeared for Debtors Scott and Heather Richter. This is a core proceeding under 28 U.S.C. § 157(a).

### Statement of the Case

The Trustee and IRS argue the Debtors' Chapter 13 bankruptcy case should be dismissed under 11 U.S.C. § 109(g)(2) because the case was filed within 180 days of Debtors' voluntary dismissal of a previous case after a creditor requested relief from stay. Debtors resist, arguing that § 109(g)(2) was not meant to apply on these facts and that it would be inequitable for the Court to dismiss their case under these circumstances. The Court agrees with Debtors and denies the Motion to Dismiss for the reasons that follow.

**Statement of Facts**

Debtors filed their first Chapter 13 petition on February 4, 2010 ("first case"). On March 18, 2010, Creditor Harley-Davidson Credit Corp. filed a Motion for Relief from Stay. It sought the return of a 2008 Harley-Davidson FXCWC Rocker Softail motorcycle. Debtors did not resist the Motion. The Court granted relief from the stay on April 9, 2010. Debtor surrendered the collateral to Harley Davidson on April 19, 2010.[1]

Debtors filed their Chapter 13 plan in the first case on March 4, 2010 between the time of the case filing and the grant of relief from stay. This plan drew an objection from the Trustee and four more objections from creditors. Two of those creditors specifically objected to confirmation of Debtors' plan because it inappropriately "crammed down" claims connected to vehicle purchases made within 910 days of the bankruptcy filing. The Court ordered Debtors to file an amended plan by April 27, 2010. No amended plan was filed. Instead, on May 3, 2010 Debtors filed a Motion to Dismiss the first case voluntarily. The Court granted this Motion on May 4, 2010.

On the same day (May 4, 2010), Debtors filed a second Chapter 13 bankruptcy case ("second case"). This second case is the subject of the Motion to Dismiss before this Court.

**Conclusions of Law**

The governing provision, 11 U.S.C. § 109(g)(2), states in pertinent part:

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if-

---

[1] Harley Davidson filed another Motion for Relief from Stay in Debtors' second case regarding the same collateral it appeared to repossess during the first case. While the record is somewhat unclear on what happened to Harley Davidson's collateral, statements made by Mr. Klesner, counsel for Debtors, indicate that such collateral was surrendered during the pendency of the first case. Without any evidence in the record to the contrary, the court accepts the statements by Debtors' counsel.

2

> …
> (2) the debtor requested and obtained the voluntary dismissal of the
> case following the filing of a request for relief from the automatic
> stay provided by section 362 of this title.

The issue before the Court is whether the second case must be summarily dismissed under a strict interpretation of § 109(g)(2).[2] Debtors argue against strict interpretation of § 109(g)(2). They argue instead that §109(g)(2) should be read as requiring some connection between the relief from stay and the voluntary dismissal. They argue there is no evidence of such a connection or linkage in this case.

I.   Split of Authority on Proper Interpretation

This issue has sharply divided courts and commentators. Several different approaches to interpretation of § 109(g)(2) have been used or suggested. One case described three predominant approaches in interpreting § 109(g)(2): strict statutory interpretation; a causal connection interpretation; and an equitable considerations interpretation. In re Sole, 233 B.R. 347, 348-50 (Bankr. E.D. Va. 1998). A more recent law review article described at least four main approaches to § 109(g)(2): plain language/mandatory interpretation; discretionary interpretation; causal connection interpretation; and requirement of pending § 362 motion at time of voluntary dismissal. Ned W. Waxman, *Judicial Follies: Ignoring the Plain Meaning of Bankruptcy Code § 109(g)(2)*, 48 ARIZ. L. REV. 149 (2006). There are essentially two main divisions in the interpretative approach: (1) cases that find the strict interpretation is mandatory; and (2) those that allow for an exception to strict interpretation.

---

[2] There is no dispute that the Debtors refiled within 180 days of the voluntary dismissal of the first case. There is also no dispute that the voluntary dismissal came at a point in time after Harley Davidson obtained relief from the stay.

3

A.  Strict Interpretation/Mandatory Approach

Courts that strictly apply section § 109(g)(2) "hold that the meaning of [the statute] is plain and unambiguous, and that the language of the statute dictates a broad rule of dismissal." Sole, 233 B.R. at 349 (citing In re Andersson, 209 B.R. 76 (6th Cir. B.A.P. 1997); In re Keziah, 46 B.R. 551 (Bankr. W.D. N.C. 1985)). They assert that the word "following" has a temporal meaning and requires dismissal of any and all cases refiled within 180 days of a voluntarily dismissal of a case in which a motion for relief from stay had been filed. In re Munkwitz, 235 B.R. 766, 768 (Bankr. E.D. Penn. 1999); See also Andersson, 209 B.R. at 78; In re Dickerson, 209 B.R. 703, 707-08 (Bankr. W.D. Tenn. 1997). Some even acknowledge that a "blanket rule" may be harsh and include cases where no abuse exists, but they conclude such a rule is sensible because the harm caused is brought upon the debtors themselves through their decision to voluntarily dismiss. Munkwitz, 235 B.R. at 768-69 (citing Idahoan Fresh v. Advantage Produce Inc., 157 F.3d 197, 202 (3d Cir. 1998)); accord In re Steele, 319 B.R. 518, 520 (Bankr. E.D. Mich. 2005). The Trustee and IRS argue for this approach.

B.  Cases Finding Exceptions to Strict or Mandatory Interpretation

A second group of cases allow for exceptions to strict interpretation. These cases note that mandatory/strict interpretation can produce results demonstrably at odds with what Congress intended to accomplish in § 109(g)(2). In re Luna, 122 B.R. 575, 577 (9th Cir. B.A.P. 1992). These cases reject and warn against "mechanical" or "wooden approaches" that strictly apply § 109(g)(2) to all cases without regard for, or analysis of, the result. See In re Beal, 347 B.R. 87, 90-91 (Bankr. E.D. Wis. 2006) (quoting In re Howard, 311 B.R. 230, 231-32 (Bankr. E.D. Wis. 2004)). For example, these courts have highlighted situations that show the absurdity of a blind mechanical approach–like where the motion for relief from stay was filed but immediately

4

withdrawn because it was filed erroneously based on a creditor accounting error.  Id. at 91 (citing Howard, 311 B.R. at 232).  Such cases hold that to dismiss a second case under § 109(g)(2) based on such facts is absurd, protects no one, and only serves to deny debtors a remedy to which they are rightfully entitled.  Id. (citing Howard, 311 B.R. at 232).  These cases finding an exception to strict application of the statutory language have used a variety of rationales mentioned previously.  Those approaches are briefly described in the following paragraphs.

    1.  Equitable-Discretionary Approach

Some courts have exercised their discretion and dismiss under § 109(g)(2) only when the result is within purpose of the Bankruptcy Code and the abuses Congress sought to curb.  Luna, 122 B.R. at 577 (following discretionary application line of authority); In re Santana, 110 B.R. 819, 822 (Bankr. W.D. Mich. 1990) (denying motion to dismiss when dismissal would reward creditor misbehavior and go beyond the scope of Congressional intent); Waxman, 48 ARIZ. L. REV. at 154; See also Beal, 347 B.R. at 91 (listing cases applying discretionary approach); In re Hutchins, 303 B.R. 503, 508-09 (Bankr. N.D. Ala. 2003) (stating that "mandatory application [of § 109(g)(2)] in every case would penalize debtors even when the Motion for Relief from Stay is resolved in the debtor's favor,"  and reasoning that Congress did not intend the Code to hurt debtors who "have unforeseen circumstances and may honestly need to dismiss a bankruptcy case and file again shortly thereafter.").  These cases hold that courts can exercise discretion to find § 109(g)(2) to be inapplicable when the creditor is not unfairly prejudiced, a dismissal would be absurd or illogical, or when the creditor (and not debtor) has acted in bad faith.  Waxman at 154-56; See also Luna, 122 B.R. at 576-77  (finding that a mechanical application of 109(g)(2) "would reward [the creditor] for acting in bad faith [in knowingly violating the automatic stay] and punish [the debtor] for acting in good faith"); Howard, 311 B.R. at 232

5

(holding that "[a]pplying the statute on a case by case basis, requiring the debtor to show cause that the 180-day bar should not apply and that no prejudice would occur to the creditor who requested relief from the stay is a sensible and reasonable interpretation of § 109(g)(2)"). These cases rely on equitable discretion as the basis for creating an exception to the otherwise strict application of the language of § 109(g)(2).

    2.    Causal Connection Approach

Courts that adopt the "causal connection" approach require a causal relationship between the voluntary dismissal of the previous case and the motion for relief from stay the creditor had filed in that case before they will dismiss under § 109(g)(2). Courts emphasize that without a connection between the motion for relief from stay and the voluntary dismissal, the abuse Congress intended to prevent is not present and dismissal is not warranted. Sole, 233 B.R. at 350 (citing and quoting In re Duncan, 182 B.R. 156, 159 (Bankr. W.D. Va. 1995) ("Absent a causal relationship, there is no abuse to curb and no purpose to be served by keeping the former debtor out [of] bankruptcy for 180 days.")). Other cases applying this approach are In re Bullock, 2008 WL 7880894 (Bankr. N.D. Ga. 2008); In re Copman, 161 B.R. 821 (Bankr. E.D. Mo. 1993). The debtors argue for the causal connection approach in this case.

    3.    Pending Motion Approach

Under the pending motion approach, courts apply § 109(g)(2) to dismiss the new case only if the motion for relief from stay is "pending or unresolved at the time the debtor obtains a voluntary dismissal." Waxman, 48 ARIZ. L. REV. at 161 (citing In re Jones, 99 B.R. 412 (Bankr. E.D. Ark. 1989); In re Milton, 82 B.R. 637 (Bankr. S.D. Ga. 1988); In re Patton, 49 B.R. 587 (Bankr. M.D. Ga. 1985)). The pending motion approach holds that if the motion for relief from stay has been withdrawn, dismissed, granted, denied, or settled when the debtor requests and

obtains dismissal of the case, § 109(g)(2) does not apply.  See Beal, 347 B.R. at 93 (applying this approach and citing the Waxman article).  Again, this approach tries to avoid a "mechanical" approach that would penalize debtors that did not engage in the type of abusive practices Congress tried to address in § 109(g)(2).  Id. at 90-91.  While the pending motion approach is related to, if not a subset of, the causal connection approach, its reach is more limited.  It confines the inquiry to the more objective question of whether the motion for stay relief is pending or has been resolved.  It does not look to the broader question of what actually caused the voluntary dismissal.

II.     Eighth Circuit Case Law

The Eighth Circuit addressed this issue in 1987 in a brief, per curiam opinion.  In re Bigalk, 813 F.2d 189 (8th Cir. 1987) (per curiam).  Under the facts particular to the Bigalk case, the Eighth Circuit held that a case "submitted within 180 days of the voluntary dismissal . . . should not have been accepted for filing and the bankruptcy court properly dismissed it."  813 F.2d at 190.  In Bigalk, a debtor had previously voluntarily dismissed three different Chapter 13 cases and immediately refiled new bankruptcy petitions.  Id.  These dismissals and refilings all occurred on the eve of, or within hours of, scheduled foreclosure sales by a creditor that had filed for and/or received relief from the automatic stay.  Id.  The net effect was to dismiss the case where the stay had been lifted and refile a case to put a new stay immediately back in place.  The Eighth Circuit court stated that § 109(g)[3] was enacted by Congress to address abuse of the bankruptcy process.  Id.  The Eighth Circuit affirmed the bankruptcy court's decision to dismiss the third refiling in light of the abusive tactics used by the debtors in Bigalk. Under those facts, the court found that the language was clear and dismissal was required.  Id.  The Circuit,

---

[3] The Court, in Bigalk, referred to this Code section as § 109(f) but has since been renumbered as § 109(g) as discussed by this Court's opinion.

7

however, did not have occasion to address the "causal connection" or "pending motion" analysis because it was not involved. In <u>Bigalk</u>, the relief from stay was pending each time the debtor dismissed and was clearly the cause or reason for dismissal.

## Analysis

This Court rejects the strict interpretation approach. Instead, the Court adopts an approach which is a combination of the pending motion and discretionary approaches to interpreting § 109(g)(2). The Court believes such an interpretation best comports with the intended purpose of the statute and the recent Supreme Court standards for interpreting the Code and implementing Chapter 13.

Chapter 13 bankruptcies are inherently flexible cases that seek to give the debtor a fresh start while setting out a plan to fairly compensate their creditors. <u>Hutchins</u>, 303 B.R. at 509 (citing <u>Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle)</u>, 12 F.3d 1008, 1011 (11th Cir. 1994)). The Bankruptcy Code favors a fresh start for honest debtors. <u>Grogan v. Garner</u>, 498 U.S. 279, 286 (1991) ("[A] central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt . . . [for the] honest but unfortunate debtor.'" (quoting <u>Local Loan Co. v. Hunt</u>, 292 U.S. 234, 244 (1934)). This fresh start is limited to honest debtors. <u>Id.</u>

The United States Supreme Court has consistently interpreted the Bankruptcy Code with those purposes in mind and a determination to avoid absurd or illogical results. Adherence to statutory language is generally required, except when such adherence would yield illogical results that are contrary to the intended purpose of the law. <u>United States v. Ron Pair Enter. Inc.</u>, 489 U.S. 235, 242 (1989). The Supreme Court has noted that the Code should be interpreted in a

8

"holistic" manner to properly understand each provision's meaning with the entire scheme. See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd. 484 U.S. 365, 371 (1988). This past term, the Supreme Court reiterated this approach to interpreting the Code and expanded upon its implementation in Hamilton v. Lanning, 130 S.Ct. 2464 (2010).

In Hamilton, the Supreme Court addressed the method by which current monthly income should be calculated for purposes of determining projected disposable income under 11. U.S.C. § 1325. Id. at 2469. Petitioners in the case argued for a "mechanical approach" that unflinchingly applied the plain statutory language to every case, no matter the result. Id. at 2471. Respondents argued for a "forward looking" approach that could take into account the variables of each case. Id. Respondents acknowledged the "mechanical approach" would always be the starting point and would end up applying in most cases, but argued exceptional circumstances should be taken into account through the "forward looking" approach to make reasonable adjustments to the calculation. Id. The Supreme Court adopted Respondent's "forward looking approach." Id. at 2477-78. The Court found the plain statutory language as written in § 1325 should be the starting point for each case, but allowed for a narrow exception to be considered in unusual cases. Id. The Court found this would effectuate Congressional intent and avoid absurd results. Id.

In reaching its conclusion in Hamilton, the Supreme Court was persuaded by several important factors. The Court found that bankruptcy courts had traditionally retained some discretion to account for extraordinary circumstances that did not fit the general approach. Id. at 2472-73. The Court noted that this was "well-documented in contemporary bankruptcy treatises." Id. 2473. (citing 8 Collier on Bankruptcy ¶ 1325.08[4][a], p. 1325-50 (15th ed. rev. 2004) (stating that Courts should follow the literal language of the statute unless there are

9

"changes which can be clearly foreseen."); 3 W. Norton, Bankruptcy Law and Practice § 75.10, p. 64 (1991) (stating that Courts should follow the mechanical approach, absent extraordinary circumstances)). The Court noted that this well-documented discretionary approach was known to Congress when it drafted the 2005 BAPCPA amendments to the Code, but Congress took no action to correct it or make clear that it should not be used. Id. at 2473-74.

The Supreme Court also found the arguments in favor of the "mechanical approach" to be unpersuasive. The Court specifically found "the mechanical approach would produce senseless results that we do not think Congress intended." Id. at 2475-76. The Court concluded "the Code does not insist upon rigid adherence to the mechanical approach in all cases . . . ." Id. at 2477. The Court in particular rejected suggestions that the debtor could simply delay the filing and avoid the problem altogether. Id. at 2476. The Court instead concluded that a "forward looking" approach that functioned as a narrow exception to the strict mechanical approach was an appropriate method for dealing with the issue.

The Hamilton analysis must guide this Court's interpretation of § 109(g)(2). The Trustee and IRS essentially argue for a strict, "mechanical approach" without regard to the circumstances of the case – similar to the approach the Trustee unsuccessfully argued for in Hamilton. See Beal, 347 B.R. at 90-91 (citing Howard, 311 B.R. at 231-32) (discussing the illogical and absurd results that can be incidental to a "mechanical" application of § 109(g)(2)). This Court rejects a strict mechanical approach to interpreting § 109(g)(2) because it "would produce senseless results [that this Court does] not think Congress intended." Hamilton, 130 S. Ct. at 2475-76.

Section 109(g)(2)'s language reflects a Congressional intent to curb abusive multiple filings intended to frustrate creditors. S.Rep. No. 65, 98th Cong. 1st Sess. 74 (1983) ("The purpose of [§ 109(g)] is to provide the court with greater authority to control abusive multiple

10

filings."). Accord In re Ulmer, 19 F.3d 234, 235 (5th Cir. 1994) ("Congress enacted section 109(g)(2) to prevent debtors from frustrating creditor's efforts to recover funds owed them.") (citing Harry Wright, *Must Courts Apply Section 109(g)(2) When Debtors Intend No Abuse in an Earlier Dismissal of Their Case?*, 7 EMORY BANKR. DEV. J 103, 106-07 (1990));  Patton, 49 B.R. at 589 (describing the purpose of the then new section of the Code as addressing instances where a debtor repeatedly frustrates a creditor's attempts to foreclose on its secured interests by voluntarily dismissing and refiling bankruptcy case after the creditor applies for and/or receives relief from the stay); Bullock, at 3 ("[109(g)(2)] is intended to prevent abusive behavior by debtors who seek to avoid a creditors efforts to recover property."). Courts adopting a version of the equitable/discretionary approach, the causal causation approach, and the pending motion approach honor this Congressional intent.

In particular, this Court finds the reasoning of the "pending motion" (i.e. one not already resolved) analysis persuasive. See Beal, 347 B.R. at 93. In those cases, courts have applied an exception to dismissal under § 109(g)(2) when there has been a resolution of the motion for relief from stay before the voluntary dismissal of the earlier case occurred. Milton, 82 B.R. at 639-40 (holding that even when motions for relief from stay were not dismissed or withdrawn they were rendered moot by settlement of the parties and thus no unresolved motions for relief existed when debtors dismissed their first case).

The "pending motion" approach tailors the interpretation of § 109(g)(2) to address only the abuse prevention concerns Congress sought to address. The approach recognizes that when a motion for relief from stay is pending it is important that such a motion not be thwarted by debtors who voluntarily dismiss in order to frustrate a creditor, then turn around, and abusively refile. See e.g. Bullock, 2008 WL 7880894; In re Sakhrani, 2006 WL 3483928 (Bankr. D. N.J.

11

2006). However, the approach also recognizes there is no purpose in barring the filing of a second case when a motion for relief is resolved or rendered moot, before the voluntary dismissal. See Beal, 347 B.R. at 13 (adopting the approach suggested by the Waxman article and Collier's treatise).

The Court also finds, as the Supreme Court did in Hamilton, that rejection of the mechanical interpretation of § 109(g)(2) is consistent with leading bankruptcy treatises. Alan N. Resnick, Collier on Bankruptcy ¶109.08 (Henry J. Sommer eds., 16th ed.). The Collier treatise specifically states:

> [T]he goal of section 109(g) is to curb abuses of the bankruptcy system . . . In light of its purpose, it should not be applicable if the debtor successfully defended against or resolved the motion for relief from the stay or paid in full the creditor who moved for relief . . . [C]ertainly, the purpose of preventing abusive refilings is not served when the motion for relief and the dismissal are totally unrelated.

Collier, ¶109.08 (cited in part by Beal).

Many cases, as noted above, have reached similar conclusions by exercising a narrow, equitable discretion to decide whether to grant or deny a § 109(g)(2) motion to dismiss. See Luna, 122 B.R. at 577; see also In re Hess, 347 B.R. 489, 496 (Bankr. D. Vt. 2006) (citing In re Sherman, 441 F.3d 794, 813 (9th Cir. 2006); In re Zick, 931 F.2d 1124, 1126 (6th Cir. 1991); In re Atlas Supply Corp., 857 F.2d 1061, 1063 (5th Cir. 1988)). As one court noted, when strict application of a statute's plain language would result in "manifest injustice . . . judicial discretion must be exercised." Hess, at 495 (citing Rector, Etc., of Holy Trinity Church v. United States, 143 U.S. 457, 459 (1892)). While other courts and commentators have been hesitant to rely entirely on this discretion for creating the exception to a strict reading of § 109(g)(2), this Court believes it should be part of the analysis.

In this case, the collateral (a motorcycle) which was the subject of the creditor's Motion for Relief from Stay in the first case was surrendered before the voluntary dismissal of that first case. The voluntary surrender resolved the Motion for Relief from Stay. Debtors' refiling -- while falling within the ambit of a strict mechanical reading of § 109(g)(2) -- in no way thwarted the § 362 rights of creditors. This refiling did not fall within the purpose or intent of Congress in enacting § 109(g)(2). Dismissal here would senselessly punish debtors without good reason. The Court concludes that an exception to the strict application of § 109(g)(2) is required here.

This Court's adoption of what amounts to a combination of the pending motion and discretionary approaches leads to results here that are similar to the result reached in Hamilton. There, the Supreme Court found the strict "mechanical" approach to be the starting point in each case. The Court then allowed a narrow exception, rooted in and crafted from the bankruptcy court's long-established equitable discretion, for exceptional cases to avoid absurd or senseless results. Hamilton, 130 S. Ct. at 2471-75.

Under the Hamilton type of analysis, this Court begins by reading § 109(g)(2) as functionally prohibiting most refilings within 180 days of a voluntary dismissal of a previous case after a creditor had filed for relief from the automatic stay. This Court, like many other courts, then recognizes a narrow exception to that strict application of the statute where the motion for relief from stay is no longer pending or has been resolved before the dismissal of the previous case.

Adoption of this exception is consistent with the Eighth Circuit's decision in Bigalk. The Eighth Circuit's decision in Bigalk affirming the dismissal under § 109(g)(2) was not a wholesale endorsement of the strict interpretation approach. The Circuit's decision was simply an application of the general rule. The Eighth Circuit was not faced with a factual situation that

13

allowed for consideration of the exception adopted here. In <u>Bigalk</u>, the stay issues were pending and not resolved before the dismissal and refiling within 180 days. The facts in <u>Bigalk</u> were exactly those that fell directly within the intended reach of § 109(g)(2). The debtor there had several times dismissed and refiled to avoid pending stay issues. This Court believes that if the Eighth Circuit were to consider the § 109(g)(2) issue on facts similar to those before this Court, it too would adopt the exception under the analysis provided above and consistent with <u>Hamilton</u>.[4]

### Conclusion

This Court, following the Supreme Court's approach in <u>Hamilton</u>, concludes that the Debtor's case falls within an exception to the strict reading of § 109(g)(2) and that dismissal is not required under the facts of this case.

**WHEREFORE**, U.S. Trustee's and IRS's Motion to Dismiss is DENIED.

Dated and Entered: October 22, 2010

_/s/ Thad J. Collins_
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE

---

[4]Trustee's brief focuses on an alleged abuse of the bankruptcy system through the use of voluntary dismissals and successive filings to bide time for Debtors' encumbered vehicles to fall under the advantageous post-910 day vehicle cram down provision. <u>See</u> 11 U.S.C. § 506(a); 11 U.S.C. § 1325(a)(*) (which refers to the unnumbered paragraph directly following 11 U.S.C. § 1325(a)(9)). A decision on the merits of whether a Debtor should be allowed to use successive filings to bide time in order to gain the advantages of a post-910 day cram down is not warranted as this is not the ground upon which Movants seek dismissal. This issue can and should be addressed at the time of the confirmation hearing.